IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

|  |  |
|---|---|
| JACOB MABUS,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE INC., ET AL.,<br><br>*Defendants*. | CAUSE NO. 3:24-CV-631-CWR-ASH |

**ORDER OF REMAND**

Before the Court is the plaintiff's motion to remand. Docket No. 4. Upon review, the motion will be granted.

**I.  Factual and Procedural History**

On April 27, 2023, a homeowner in Jackson, Mississippi found her petsitter, Jim Mabus, Jr., in distress on her living room floor. The homeowner called 911 five times, but it took the ambulance service approximately an hour to dispatch someone. Jim Mabus, Jr. passed away a few days later.

In 2024, the administrator of Mabus's estate—Jacob Mabus (hereinafter "Mabus")—filed this wrongful death suit in state court. He alleged that the ambulance service negligently failed to allow a competitor to respond to the 911 call, causing his relative's untimely death. Mabus named as defendants the ambulance service and its operations manager Ryan Wilson.

The ambulance service removed the case here. It asserted that Wilson, a Mississippian, was improperly joined in this action to defeat diversity jurisdiction. The Court *sua sponte*

remanded the matter after seeing no indication that the ambulance service had shown an amount in controversy sufficient to meet the jurisdictional minimum.

The ambulance service removed the case here again, this time providing evidence of the amount in controversy. It renewed its argument that Wilson was improperly joined to defeat diversity jurisdiction, contending among other things that he was not on duty the night in question. Mabus disagrees that the timing matters, essentially arguing that Wilson bears personal responsibility for the dispatch system that caused the wrongful death.

## II.     Legal Standard

"[F]ederal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm*, 603 F.3d 290, 292 (5th Cir. 2010) (quotation marks and citation omitted). "The district courts have original jurisdiction of civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interest, and is between citizens of different states." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 248 (5th Cir. 2011) (citing 28 U.S.C. § 1332).

In this case it is now evident that the amount in controversy exceeds $75,000. The issue is whether the in-state defendant has been improperly joined to defeat diversity jurisdiction.

The Fifth Circuit has stated succinctly the law of improper joinder:

> The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity. We have previously stated, but it bears emphasizing again, that the burden of demonstrating improper joinder is a heavy one. To establish a claim for improper joinder, the party seeking removal must demonstrate either (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Under this second prong, we examine whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

2

*McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005) (cleaned up). Today's improper joinder arguments fall only under the second prong of this standard.

"A district court should ordinarily resolve a[n] improper joinder by conducting a Rule 12(b)(6)-type analysis." *Id.* at 183 n.6. "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citations omitted).

"[A]ny contested issues of facts and any ambiguities of state law must be resolved in the [non-removing party's] favor." *Cuevas*, 648 F.2d at 249 (citation omitted). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quotation marks and citation omitted).

**III.   Discussion**

Mabus has sued Wilson, the ambulance service's operations manager, for "inadequate staffing, improper staffing, failure to recognize inadequacies in personnel and ambulances, inadequate supervision, etc." Docket No. 5 at 7. The question is whether such allegations state a claim under Mississippi law. If they do, then Wilson is properly named as a defendant, there is no diversity jurisdiction, and this case must proceed in state court.

Mabus first claims support from *Jones v. Waffle House*, a dispute in which this Court observed that in Mississippi, "the owner, occupant, or *person in charge* of premises owes to an invitee or business visitor a duty of exercising reasonable or ordinary care to keep the premises in reasonably safe." No. 3:12-CV-862-CWR-LRA, 2013 WL 4048549, at *2 (S.D. Miss.

Aug. 9, 2013) (quotation marks and citation omitted). Mabus also draws on *Adams v. Piccadilly Restaurants*, a case in which Chief Judge Jordan found that a victim of food poisoning might be able to state a negligence claim under Mississippi law against a restaurant manager who had admittedly "taste[d] the food that is put out." No. 3:16-CV-930-DPJ-FKB, 2017 WL 5894232, at *4 (S.D. Miss. Apr. 7, 2017).

Mabus might have prevailed on this jurisdictional dispute quickly if this was a premises liability or food poisoning case. It is not. Mabus also does not claim that Wilson faces liability as a negligent EMT or other kind of medical provider—a situation in which the individual's duty would be more clearly owed. *See, e.g.*, *Entrican v. Ming*, 962 So. 2d 28, 30 (Miss. 2007). Instead, he makes a broader argument: that in Mississippi, a plaintiff can sue a manager of any kind of enterprise, *if* the manager's failure to keep the enterprise adequately staffed caused the plaintiff harm.

Several federal cases support Mabus's view. In *Hill v. Beverly Enterprises-Mississippi, Inc.*, for example, Judge Lee compiled decisions from Judges Alexander, Bramlette, Pepper, Pickering, and Wingate finding that injured persons can state a claim against managers for "negligent execution of managerial duties." 305 F. Supp. 2d 644, 647–49 (S.D. Miss. 2003). An argument could be made that those were "just" nursing home administrator cases—which they were—but the language they employed was broad, speaking about corporate managers and principles of agency globally. It also is difficult to cabin the line of cases to nursing homes, since the Fifth Circuit precedent the district courts relied upon were *not* nursing home cases. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247–48 (5th Cir. 2000); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173–74 (5th Cir. 1985).

Mabus is also correct that a manager's presence or absence at the site of the injury is not dispositive. As the Fifth Circuit has explained, "hands-on contact by the defendants . . . does not seem required to impose personal liability under Mississippi law. One may easily be a direct participant in tortious conduct by merely authorizing or negligently failing to remedy misconduct by one's subordinates." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 410 (5th Cir. 2004). In *Gray*, "in light of the recognized ambiguity in the [Mississippi] caselaw," the Fifth Circuit ordered remand to state court. *Id.*

The ambulance service contends that Mabus cannot state a medical malpractice claim against Wilson, since he was not involved in patient care. But the Court does not construe the complaint as making a medical malpractice claim against Wilson. It is more fairly characterized as a negligent staffing claim.

The ambulance service then argues that the Mississippi Supreme Court rejected such a theory in *Howard v. Est. of Harper*, 947 So. 2d 854 (Miss. 2006). There, the court held that nursing home administrators could not "be held liable under general principles of tort law for negligent acts or omissions regarding the care of [their] residents." *Id.* at 858. Such a duty "would be duplicative of the duty already owed by the nursing home." *Id.*

Mabus responds that the case is contradicted by *Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008), in which the Fifth Circuit affirmed a jury verdict in part based on a premises manager's negligence. A brief review indicates that it is not very helpful on the jurisdictional question, though, because the manager wasn't named as a defendant in that case. Had the plaintiff pursued the manager individually, in fact, the federal court wouldn't have had diversity jurisdiction. *See id.* at 483 & n.1.

The ambulance service presses that the Mississippi Supreme Court doubled-down on *Howard* in a nursing home management case called *Est. of Gibson v. Magnolia Healthcare, Inc.*, 91 So. 3d 616, 624 (Miss. 2012). It is correct that there is some overlapping language. The waters are nevertheless muddied when later in its discussion, the *Gibson* court reaffirmed that individuals acting on behalf of an entity can, in fact, be held liable if they "commit 'individual wrongdoing.'" *Id.* (quoting *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993)). That is what Mabus alleges here.

This Court has its doubts. The Mississippi substantive law makes sense: if a manager directly causes an enterprise to be understaffed, causing harm, the manager can be named as a defendant and held liable. Less clear is why federal procedure should permit the naming of both the corporate defendant and the manager *if* the manager's addition serves only to defeat diversity jurisdiction. And yet it might be difficult to know with only pleadings whether the naming of the manager is truly additive or redundant.

The standard of review is instructive. The Fifth Circuit has consistently held that "any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez*, 543 F.3d at 251 (quotation marks and citation omitted). Until such a time as the situation is clarified, this Court's doubts about the propriety of removal require remand.

**IV.    Conclusion**

The motion is granted. *See* 28 U.S.C. § 1447(d). This case is remanded for lack of subject matter jurisdiction. No remand-related attorney's fees will be awarded.

**SO ORDERED**, this the 21st day of January, 2025.

                                                s/ Carlton W. Reeves
                                                UNITED STATES DISTRICT JUDGE